## Reybold *versus* Voorhees *et al.*

Where a contract was made for the purchase of a perishable article, namely, a growing crop of peaches, to be delivered from day to day, and paid for at the end of each week; it was *held*, that, on a single failure by the purchasers, to pay at the end of a week, the seller had a right to rescind the contract; and that an offer on the part of the purchasers, a day or two afterwards, to pay the amount due, was too late.

CERTIFICATE from the Court of *Nisi Prius.*

This was an action of covenant, by Peter Voorhees, Benjamin Marlatt, George Fielder, and Abijah Mount, trading as Voorhees, Marlatt & Co., against William Reybold. The case was tried on the 31st of December 1856, before KNOX, J., and resulted in a verdict for the plaintiffs for $1520.20; upon which judgment was entered.

It appeared on the trial that, on the 4th of August 1854, the parties entered into the following agreement:—

" An article of agreement made, this fourth day of August, A. D. 1854, between William Reybold, of the county of New Castle, and state of Delaware, of the first part, and Peter Voorhees, Benjamin Marlatt & Co., of the state of New Jersey, of the second part, doth covenant and agree with the said William Reybold for all the peaches growing on his two farms in said county; and said Voorhees, Marlatt & Co., doth agree to find baskets to put said peaches in, and pay him seventy-five cents per basket for said peaches, picked, assorted, and delivered at Delaware city, in good merchantable order, at his own proper cost and expense, or as the said Peter Voorhees or his agent may require; said peaches to be paid for at the end of each week, as delivered at Delaware city."

On the same day $500 was paid to the defendant, as security for the faithful performance of the agreement, and the following receipt was given by the defendant's agent:—

"Aug. 4, 1854. Received from Voorhees, Marlatt & Co., five hundred dollars, on account of peach orchard, as per contract to be executed.    ANTHONY REYBOLD, for WILLIAM REYBOLD."

On the following morning, which was Saturday, the defendant delivered his peaches to the plaintiffs, but was requested to take

[Reybold *v.* Voorhees *et al.*]

them back again for that day, and not to begin to deliver them, under his contract, until the following Monday, which he did. And, on Monday, the 7th of August, he commenced to deliver his peaches on the wharf, at Delaware City, in accordance with his agreement, and delivered them to the end of the week; but, at the end of that time, neither the plaintiffs, nor any one on their behalf, appeared at Delaware City, to pay the defendant, who was there in waiting. Nor did any one of the plaintiffs, or any one for them, appear at Delaware City, to make payment on the following Monday, on which day the defendant shipped his peaches to them as usual.

On Tuesday, the defendant, not having been paid, or received any communication from the plaintiffs, and the peaches already delivered amounting to the sum of $539.25, stopped sending them his peaches, and shipped them to his agent in Philadelphia, to be sold on his own account. And, on the afternoon of the same day, the plaintiffs having ascertained that fact, went to Delaware City, and tried to induce the defendant to continue sending his peaches to them; which he refused to do, alleging that they had broken their contract, and had endeavoured to overreach him. They did not, however, offer to pay for the peaches already delivered, and permit the original security to remain. They subsequently paid the balance of $39.25 due to the defendant.

The defendant's counsel submitted the following points, and requested the court to charge the jury as follows:—

1. If they believe the $500, for which a receipt was given on the 4th of August 1854, was received as security, and not as payment in advance, then it was the duty of plaintiffs, under the contract, to have paid for the peaches they had received during the first week, at the end of the first week.

2. If the jury believe that the $500 was a deposit as security, it was plaintiffs' duty to have paid for the peaches delivered at the end of the first week; and, not having done this, defendant was at liberty to regard the contract as at an end, and to dispose of his peaches thereafter at his discretion.

3. The written contract of August having specified the place for the delivery of the peaches, the place where payment therefor was to be made to defendant was also specified, to wit: Delaware City, where the plaintiffs should have attended, by themselves or agents, at the end of the week, for the purpose of making payment.

4. The written contract of August the 4th having fixed the place for the delivery of the peaches, as well as for the payments to be made by plaintiffs—if the jury believe that plaintiffs voluntarily absented themselves from Delaware City at the end of the first week, and thereby defaulted in payment, defendant was discharged from any obligation to continue to supply the peaches.

[Reybold *v.* Voorhees *et al.*]

5. That it was incumbent on plaintiffs to show that one of them, or their agent, was at Delaware City on the day agreed on for the first payment under the contract, ready to make the same, and that defendant was not ready and willing to receive the same.

The court (KNOX, J.,) delivered the following charge to the jury:—" The first question of fact for you to decide is—How was the $500 paid? Was it paid in 'advance, to apply upon the contract, as payment for the peaches when delivered? If it was, then there was no failure on the part of the plaintiff, as the peaches delivered up to Saturday, the 13th of August, amounted to less than $500, and the next payment would not fall due until the 19th of August. But if the $500 were to remain as security until the end of the delivery of the peaches, then the question arises, whether the failure to pay on Saturday, the 12th, authorized the defendant to rescind the contract? Upon this point the jury are instructed—That where a contract is made to deliver perishable articles from day to day, at a particular place, to be paid for at the place of delivery at the end of each week; upon failure by the purchaser to make the payment at the time agreed upon, the seller is not bound to deliver any more until payment is made or offered to be made; and, if this payment or offer is delayed beyond a reasonable time, taking into view the nature of the article, the seller may rescind the contract. What would be a reasonable time, would ordinarily be a question of fact for the jury, but the time may be so long as to justify the conclusion as matter of law, that it was unreasonable, or it might be so short, that in law the delay would not be unreasonable; and to apply the principle to the case in hand, the jury are further instructed, that if they find from the evidence that the plaintiffs were not present on Saturday, the 12th, to make the payment for the peaches delivered up to that day inclusive, that the defendant delivered peaches under the contract on Monday, the 14th, and that on Tuesday, the 15th, the plaintiff was ready and willing to perform the contract on his part, and did offer to perform, by paying for all the peaches delivered up to Saturday, the 12th, inclusive, and to leave the $500 to remain, as originally agreed upon, as security, and the defendant refused to deliver the peaches under the contract—he is responsible for the damages sustained by the plaintiffs in consequence of the defendant's non-compliance with the contract.

" But if the plaintiffs did not, on Tuesday the 15th, or Wednesday the 16th, offer to pay for the week's peaches, and leave the security as originally agreed upon (if such was the agreement), or if this offer in terms was not dispensed with by the positive refusal of the defendant to go on with the contract, his neglect to do so, at that time, would justify the defendant in refusing to deliver

[Reybold *v.* Voorhees *et al.*]

the remainder of the peaches, as further delay would be fatal to the plaintiffs' right to call for performance on the part of the defendant.

"The defendant's *first* point affirmed. The *second, third, fourth,* and *fifth,* are in substance negatived by the instructions given. To which is added :—That a strict performance, according to the letter, required payment at the end of the week ; but non-payment on that day, would not of itself justify the rescission of the contract by the defendant. But his right to do so, depends on what took place on Tuesday and Wednesday between the parties, already referred to.

"The measure of damages is the actual injury sustained, and that is to be ascertained by determining what the peaches were actually worth per basket, at Delaware City, at the time they were to be delivered by the contract; and if this exceeds the contract price, the excess is to be multiplied by the number of baskets which the two farms produced, and which were not delivered, and the gross sum will be the loss sustained.

"In determining the actual value of the peaches at Delaware City, the jury will recollect that the plaintiff was to furnish his own baskets; and they will also take into consideration the evidence of what the peaches were sold for at Delaware City, after the 14th, during the season, also, what they were selling for in the market of New York, Philadelphia, and other places named by the witnesses ; and also the quality of the peaches which formed the subject-matter of the contract."

This charge was excepted to by the defendants' counsel ; and the same was here assigned for error.

*Drayton* and *G. M. Wharton,* for plaintiff in error.—In leaving to the jury the question, whether the $500 was paid in advance for peaches to be afterwards delivered, great injustice was done to the defendant, as there was no evidence of its having been a payment in advance, and the proof was overwhelming that it was as security.

What is a reasonable time, in such a case as this, is essentially a question of fact for a jury ; and ought to have been submitted to them : Mellish *v.* Rawdon, 9 *Bing.* 416 ; Nelson *v.* Patrick, 2 *Car. & K.* 614 ; Facey *v.* Hurden, 3 *B. & C.* 213 ; Hunter *v.* Caldwell, 11 *Jurist* 770 ; Burton *v.* Griffiths, 11 *M. & W.* 817 ; Stewart *v.* Cauty, 8 *M. & W.* 160 ; Ellis *v.* Thompson, 3 *M. & W.* 345 ; Phillips *v.* Irving, 7 *Man. & Grang.* 325 ; Roberts *v.* Beatty, 2 *Penn. Rep.* 63 ; Atwood *v.* Cobb, 16 *Pick.* 231 ; 1 *Sugd. on Vend.* 419 ; Alexander *v.* Gardner, 1 *Bing. N. C.* 671 ; Carpenter *v.* Blandford, 3 *Mann. & R.* 93 ; Marshall *v.* Lynn, 6 *M. & W.* 109 ; Peters *v.* Opie, 2 *Wm. Saund.* 352 ; Coslake *v.* Till, 1 *Russ. Ch.* 376.

[Reybold *v.* Voorhees *et al.*]

The contract was equally binding on both; the duty to pay at the end of the week was as obligatory on plaintiffs as to deliver for a week without pay was on defendant: McNaughter *v.* Casally, 4 *McLean* 530; Bannister *v.* Read, 1 *Gilm.* 92; Startup *v.* Macdonald, 2 *Man. & Grang.* 395; Dwinel *v.* Howard, 30 *Maine* 258; Cole *v.* Hester, 9 *Iredell* 23; Martin *v.* Schoenberger, 8 *W. & S.* 398; Shaw *v.* Turnpike Co., 2 *Penn. Rep.* 454; 3 *Id.* 445.

*F. C. Brewster* and *David Paul Brown*, for defendants in error.—The court will not reverse for an error in the construction of facts by the court below, except it be laid down as *binding* on the jury: Long *v.* Ramsay, 1 *S. & R.* 72; Hamet *v.* Dundass, 4 *Barr* 178; Dennis *v.* Alexander, 3 *Barr* 50. But it is an error to assert, that there was *no* evidence of the $500 being a payment in advance. There was evidence that such was the understanding of the parties.

In most of the cases cited for the plaintiff in error, the question of reasonable time is left to the jury; but, in all of them, it is admitted that it is also sometimes a question of law. And it must be borne in mind, that the entirety of this contract had reference to the delivery of the peaches all the summer. There is no stipulation that in the event of non-payment for any one week, the contract should be rescinded. If the plaintiff meant to rescind, he should have given notice: Startup *v.* McDonald, 2 *Man. & Grang.* 395. Notice is especially required where part payment has been made: *Chit. on Cont.* 427–28; Shaw *v.* Turnpike Co., 3 *Penn. R.* 445.

The opinion of the court was delivered by

LOWRIE, C. J.—Promptness is of essential importance in the execution of a contract for the sale and delivery of a ripening crop of peaches; and when the parties have contracted for the times of delivery, and payment, they are entitled to be tried by their contract. If the buyer does not pay according to contract, the seller is not bound to keep the peaches for him at the risk of their rotting, nor to deliver them at the risk of not being paid, any more than the buyer would be bound to accept the delivery weekly instead of daily. Neither party has any time to be wasted by the unpunctuality of the other; and neither is required to endure the anxiety of having his summer's success dependant on one who is not careful of his engagement. The success of both depends upon their promptness in the performance of present duty. The seller could not expect the buyer to be running down to the country to look after his peaches, nor the buyer that the seller should be running up to Philadelphia after his money. It is the interest of both the peach dealer and the peach grower to

[Reybold *v.* Voorhees *et al.*]

agree upon the times of performance, and courts can do nothing better for the parties than to supervise the execution of the contract as made, without seeking to modify it, except where modification is required by circumstances beyond the control or contemplation of the parties.

The plaintiffs broke their contract by not paying up on Saturday, and the defendant had a right then to rescind it, and seek another market. He continued another day to execute it on his side, and again the plaintiffs failed. Then he rescinded, and a day or two afterwards the plaintiffs came and were willing to pay. We think they were too late. To relieve them would be to change their contract without cause, which we cannot do. If the plaintiffs came a few days afterwards, and offered proper terms to secure their future performance and these were rejected, this might be a defence against a suit for damages for their breach, but it could not restore the contract.

In deciding this, we have assumed that the $500 advanced were to stand as security for the plaintiffs' weekly payments, and not as a payment which they might apply to any week's delivery. We think that such is the contract. It says the payments shall be at the end of each week. The plaintiffs cannot get over this without presenting their receipt, and the necessary witness to prove it declares that the $500 were to stand as security. All the probabilities of the case, and all the other evidence confirm it. The plaintiff's case fails therefore at the very outset, because he cannot prove his own performance according to the contract. He did not pay at the end of the first week, nor offer to do it for several days afterwards.

After expressing these views, we are hardly called on to speak of the evidence furnishing a measure of damages. The place of delivery was Delaware City, and it is of the value in that neighbourhood that we must inquire. Yet a great deal must be left to the discretion of the judge in defining the neighbourhood. In doing so he might very well know that, as a peach market, Delaware City is a mere outpost of Philadelphia, and might regard the neighbourhood as thus extended, and make allowance for difference of expenses. We incline to think, however, that New York could hardly be so regarded.

Judgment reversed, and a new trial awarded.