# Rugg & Bryan *versus* Moore.

1. Where the consideration in a contract is single, the contract is entire, whatever the variety of items embraced in it, but where the consideration is apportioned expressly or impliedly to each of the items, the contract is severable, and, where the contract is by parol, the question as to the character of the consideration should be left to the jury.

2. If by a contract goods are to be paid for at each delivery, the refusal to pay for any delivery, without sufficient cause, authorizes a rescission of the contract on the part of the vendor.

3. Morgan *v.* McKee, 27 P. F. S., 228, and Scott *v.* Kittanning Coal Co., 8 Norris, 231, distinguished.

May 21, 1885.   Before MERCUR, C. J., GORDON, TRUNKEY, GREEN, and CLARK, JJ.   PAXSON, and STERRETT, JJ., absent.

ERROR to the Court of Common Pleas of *Lancaster county :* Of July Term 1885, No. 1.

Assumpsit, by John H. Moore against the firm of Rugg & Bryan, to recover damages for a breach of contract.

On the trial, before LIVINGSTON, P. J., it appeared that in July, 1879, the defendants, who were grain dealers in Peoria, Illinois, through their agent in Lancaster, sold to the plaintiff six car loads of corn at a certain price per bushel, to be delivered on cars at Landisville.   On August 16th, the first car

[Rugg & Bryan *v.* Moore.]

arrived, and also two drafts.   Plaintiff paid the first draft and wrote, asking why the remaining cars did not arrive.   On August 21st, a second car arrived, and about the same time a letter from defendants stated that all the grain was shipped, and called for payment.

Plaintiff got the corn from the second car from the station agent without presentation of the bill of lading, and refused to pay the draft until the four remaining cars should be heard from.   When defendants heard of this refusal to pay they at once notified plaintiff that they rescinded the contract.

Plaintiff finally paid the draft through the station agent, and sued for the failure to deliver the four car loads.

Plaintiff testified at the trial that the corn was all to be delivered within two weeks, the cars to be a day or two apart, so that it could be conveniently unloaded, and that he had a right to inspect the same before paying the draft.

Defendants' witness, Clark, testified that the sale was of six car-loads, and that the same were to be paid for at a fixed rate per bushel on delivery by means of the acceptance and payment of a sight draft; that there was no agreement that plaintiff should have the privilege of inspecting the corn before payment, " My instructions were to sell on sight draft, and I so sold it."

There was some testimony that the defendants understood that plaintiff was only to have two car loads.

The defendants presented the following point:

" If the jury believe that Rugg & Bryan's agent at Lancaster had no authority to sell corn in any other way than upon ' sight draft with bill of lading attached,' and John H. Moore, the plaintiff, refused to honor or accept a sight draft of Rugg & Bryan, the defendants, for any of this corn, the verdict must be for the defendants."   *Answer.*   Refused.   (Fourth assignment of error.)

The court charged the jury *inter alia,* as follows:

" They shipped two car-loads of corn to Mr. Moore, or rather shipped here in their own name, with orders to notify Mr. Moore, and sent a sight draft for the amount of each, attached to the bill of lading, to bank; their action in so doing would seem to indicate that they understood the contract as plaintiff and Mr. Clark says it was made, as to manner of shipment, payment by sight drafts, prices, etc.   Those two carloads were received by Mr. Moore and they have been paid for, so we have nothing to do with them in this case.   (Third assignment of error.) . . . .

" If the jury from the evidence find the contract to have been as stated in the testimony of the defendants, and made with Moore by defendants, through their agent, it was an entire

contract, and defendants were bound to furnish and deliver the corn before demanding pay, and if they failed so to do they would be liable in damages to plaintiff if he suffered loss.

"If the jury find, from the whole evidence, that there was a contract made by defendants, through their agent, with plaintiff for the sale to him of six car-loads of corn, to be delivered to plaintiff at Landisville, at different times, and the consideration or money for it was apportioned, or to be paid on each item or car-load, and not entire and single, it was a severable contract, and refusal to honor one draft would not rescind it, and plaintiff would be entitled to recover for a breach of it." (Fifth assignment of error.)

Verdict and judgment for plaintiff. Defendants then took this writ assigning for error, *inter alia*, the refusal of these points and the portion of the charge as above set forth.

*Eugene G. Smith* and *A. J. Steinman*, for plaintiffs in error.— The Court told the jury, in substance, if this was an entire contract the defendants are liable in damages; and if it was a severable contract the plaintiff would be entitled to recover. This took all protection away from defendants. The contract was payment on delivery. If the purchaser refused to perform the contract on his part, the vendors were excused from further delivery. Bradley *v.* King, 44 Ill., 339; Dwinel *v.* Howard, 30 Me., 258; Stephenson *v.* Cady, 117 Mass., 6; Canal Co. *v.* Gordon, 6 Wallace, 561; Mills *v.* Slater, 12 R. I., 82; Norrington *v.* Wright, 115 U. S., 188.

*H. M. North* (*E. D. North* with him), for defendant in error. —What the defendants did, and what they might have done, are quite different. They failed to perform, and were sued for damages. They did not rescind, nor had they any right to do so. If their contract was entire, they should have delivered all the cars before drawing any draft; if severable, the failure to honor one draft did not relieve them from future delivery. They were bound to tender, and if payment was refused, they need not deliver.

Mr. Justice GREEN delivered the opinion of the court, October 5th, 1885.

This case comes before us in an unsatisfactory manner. The theory of the defence was that the contract was for the sale and delivery of six carloads of corn to be paid for at a price per bushel on the delivery of each carload, by means of the acceptance and payment of a sight draft for each carload. There was evidence in support of this theory, the most precise and persuasive of which came from the plaintiff on the witness

stand, and from his act of accepting and paying the draft drawn for the first carload.   He also said the price was to be by the bushel and named the amount, 45¾c. for yellow and 45¼ for mixed, and the defendant's witness concurred that the price was to be by the bushel, but did not name the price.

The chief complaint of the defendants is, that under the charge of the court, they had no hearing before the jury on their theory of defence, and a careful examination of the charge appears to sustain the complaint.   This is partly the fault of the defendants, because they might have exhibited their theory in a point expressing it intelligibly, and asked the instructions of the court, but they did not do so.   The only point they did present mingled a question of the authority of the agent with a refusal of the plaintiff to accept any draft, and asked a peremptory instruction for a verdict upon those two matters only, when they alone would not necessarily result in a verdict for the defendants, even if found as stated in the point—that would depend upon other facts not expressed or provided for in the point.   We cannot say therefore that there was error in the mere refusal to affirm the point in the terms in which it was propounded.

But in other respects we think the charge tended to mislead the jury, and for that reason the case must be reversed.   Thus, the learned judge said in his charge : " If the jury, from the evidence, find the contract to have been as stated in the testimony of the defendants, and made with Moore by the defendants through their agent, it was an entire contract and defendants were bound to furnish and deliver the corn before demanding pay, and if they failed so to do they would be liable in damages if he suffered loss.   If the jury find from the whole evidence that there was a contract made by defendants through their agent, with plaintiff for the sale to him of six carloads of corn to be delivered to plaintiff at Landieville at different times, and the consideration or money for it was apportioned or to be paid on each item or carload and not entire or single it was a severable contract, and refused to honor one draft would not rescind it, and plaintiff would be entitled to recover for a breach of it."   According to this, the plaintiff was entitled to recover in any event, whether the contract was entire or severable, and the only discretion which the jury had was to assess the damages.   Nor did it matter under this language what breaches had been committed by the plaintiff.   If he had refused to pay for the corn already delivered he could, nevertheless, require the defendant to continue delivering, if the contract was entire, and if it was severable the failure of the plaintiff to perform his part of each item of the contract, did not authorize the defendants to decline performing all the items

of the contract on their part; and if they did so decline the plaintiff could mulct them in damages for so acting. We do not think this was a correct view either of the facts of the case or of the rights and duties of the parties. It does not seem to us that the contract between these parties was an entire contract in any view of the testimony. No witness for the defendants or for the plaintiff testified that the corn was all to be delivered before the price was to be paid, or that the sale was a sale in bulk, the whole consideration being an entirety and to be paid at one time. In Lucesco Oil Co. *v.* Brewer, 16 P. F. S., 351, we held that whether a contract was severable or entire depended upon the character of the consideration, thus: "It is the consideration to be paid and not the subject or thing to be performed that determines the class to which a contract belongs. Its entirety or separableness depends not upon the singleness of its subject or the multiplicity of the items composing it, but upon the entireness of the consideration, or its express or implied apportionment to the several items constituting its subject. If the consideration is single the contract is entire, whatever the number or variety of the items embraced in its subject; but if the consideration is apportioned expressly or impliedly to each of these items the contract is severable." As the defendants' witness, Clark, testified that he sold six carloads, deliverable at different times, and payable at a price per bushel by drafts at sight, there was an entire absence of an express agreement that the whole price of all the carloads was to be paid at one time, and after the delivery of the entire quantity, and a strong inference that drafts at sight were to be payable whenever drawn and at each delivery. It was error, therefore, for the learned court below to say absolutely that if the defendants testimony was believed the contract was entire. The question as to the character of the contract should have been submitted to the jury upon all the evidence, and then they would have considered it upon the testimony both of the plaintiff and the defendants, and viewed in this manner they could not consistently with the evidence, have found an entire contract.

Then they should have been told that if it was the contract of the parties that the corn was to be paid for at each delivery, whether one car or more, and the plaintiff refused to pay for a delivery which had been accepted by him, without some sufficient reason for such refusal, he thereby authorized the defendants to rescind, and if within a reasonable time thereafter they exercised their right of rescission, the contract was at an end and the plaintiff could not recover. This view is expressed with reference to the state of the evidence exhibited upon the present record. Whether a contract when severable is of such

[Rugg & Bryan *v.* Moore.]

a character that one party may refuse to perform his part as to one of the terms, and nevertheless require the other party to continue full performance of his part of each term upon peril of damages for non-performance, is a much vexed question upon which neither the English nor the American courts are agreed, and as to which it is not easy to state a uniform rule. In this state we have held that where a contract consisted of several entirely distinct and independent parts, each of which could be performed without reference to the others, a failure of one of the parties to perform one of the terms did not authorize the other to rescind the whole contract and refuse performance of the other terms by the party in default in the first instance, when such further performance was subsequently tendered: Morgan *v.* McKee, 27 P. F. S., 228. But in this case there were eight separate contracts, each for the delivery of 500 barrels of oil at fixed times and a specified price. The action was on three of them by the seller against the buyer for refusing to accept after default in a delivery, and the question arose on a rejected offer to prove that the contract was entire for 4000 barrels, that the first four deliveries were accepted and paid for, that the fifth delivery was defaulted by the seller, and that when the next delivery was tendered by the seller the buyer gave notice of an election to rescind on account of the previous month's default and declined acceptance of either that or the subsequent deliveries. We held that the offer could not be received because it contradicted the written contracts by parol testimony, because each delivery was the subject of an independent agreement, the breach of which would authorize a recoupment in damages but not a rescission of the other contracts, and because the right of rescission was not exercised within a reasonable time. The case is not parallel with the present and contains no element which determines it. Nor is the case of Scott *v.* Kittanning Coal Co., 8 Norr., 231, any more in point. There the action was by the seller against the buyer for not taking, or not calling for, a large part of an entire lot of 50,000 tons of coal to be delivered on monthly calls by the buyer, of 6000 tons each, after having taken 18,000 tons which were called for and delivered, but not in exact accordance with the contract. The defendants contended that inferior coal was delivered among the 18,000 tons, and that they were thereby defrauded and authorized to rescind the contract as to the remainder on that account. But we held that while they might have refused to accept the inferior coal, they had in fact accepted it and sold it, and therefore could not rescind the contract because they could not restore the inferior coal, and had never notified plaintiffs of their intent to rescind. The case does not raise the question which is presented in this.

14 OUTERBRIDGE—16

The case of Reybold and Voorhees, 6 Cas., 116, is more closely analogous both in its facts and in the character of the question determined.   The action was brought by the buyer against the seller for damages for not delivering peaches under a contract to deliver the seller's entire crop and receive weekly payments for all peaches delivered during each week. The buyer defaulted in his payment for the first week.   The seller continued to deliver on the Monday following, but receiving no payment he on Tuesday stopped his deliveries.   The buyer on the next day offered to pay and asked to have the deliveries continued, which the seller refused and thereupon the action was brought.

LOWRIE, C. J., in speaking of the rights and duties of the parties in these circumstances, said: " The plaintiffs broke their contract by not paying up on Saturday, and the defendant had a right then to rescind it and seek another market. He continued another day to execute it on his side and again the plaintiffs failed.   Then he rescinded, and a day or two afterward, the plaintiffs came and were willing to pay.   We think they were too late.   To relieve them would be to change their contract without cause, which we cannot do." Other courts have held similar doctrine in similar circumstances, as in Bradley *v.* King, 44 Ill., 339; Dwinel *v.* Howard, 30 Me., 258; Stephenson *v.* Cady, 117 Mass., 6; Haines *v.* Tucker, 50 N. H., 307; The King Phillip Mills *v.* Slater, 12 R. I., 82.   In the case at bar, it does not appear that particular times of delivery were fixed, nor the quantity of each delivery.   But it does appear in the testimony of both parties that payments were to be made when deliveries were made.

The defendants' witness said the corn was to be paid for on sight drafts, but did not say at what times or for what quantities of corn they were to be drawn.   The plaintiff said drafts were sent with bill of lading attached and he paid the first and refused to pay the second, because he wanted to see whether the defendants had shipped or would ship all the corn. This was not a sufficient reason for refusing to pay after he had accepted and received the corn.   If then the contract required payments on deliveries, and the plaintiff wilfully refused payment according to the contract, he thereby authorized defendants to rescind at their option.

The defendants did give notice of rescission at once if payment was not made of the draft for the last delivery and it was not.   We think this right of rescission was exercised within a reasonable time.   We sustain the third and fifth assignments.

Judgment reversed and *venire de novo* awarded.