## Gill, Appellant, *v.* Johnstown Lumber Co.

[Marked to be reported.]

*Entire and severable contracts—Apportioned consideration.*

Where a contract consists of several items with a price apportioned to each, it will usually be considered severable; but if the consideration or price is single and entire the contract must be held entire, although consisting of several distinct items.

*Contract to drive lumber into boom.*

A contract to drive different kinds of lumber into a boom, at a stipulated price per log, piece or thousand feet respectively, is a severable contract.

*Entirety of performance—Analogy to common carrier.*

There can be no recovery for lumber partly driven or which was carried by the force of a flood into and through the boom. The contract is in this respect entire, for the driving of the lumber all the way, and nothing can be recovered for driving it part of the way. It is like the contract of a common carrier to deliver at a designated place, under which he can recover nothing for freight pro tanto, if prevented by accident from delivering according to contract.

Argued Oct. 11, 1892. Appeal, No. 173, Oct T., 1892, by John L. Gill, plaintiff, from judgment of C. P. Cambria Co., June T., 1891, No. 471, on verdict for defendant. Before PAXSON, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit for driving lumber under the following contract, dated March 20, 1889, signed by defendant as first party and by plaintiff as second party:

" The said first party does this day hereby let unto said second party the contract for driving a certain lot of logs, to contain four million feet, more or less, in and along a stream called Stony creek and its branches, viz.: Quemahoning, Paint, Clear, and Dark Shade, from where said logs are banked or scattered along or in said streams, excepting on said Quemahoning said drive is to commence at a bridge on old turnpike below Dr. Joseph Covode's dam, in Jenner township, Somerset county, Pa., and deliver logs in said first party's boom at Johnstown for and in consideration of the sum of one dollar per thousand feet for oak and seventy-five cents per thousand feet for all other kinds of logs, scale measure, same as paid in purchase of said logs.

" It is also hereby agreed and understood that said logs to be driven are those purchased and scaled during the past winter and up to time of completion of said drive from following parties: [naming them ;] and any others who may put logs in said streams and be scaled this season before said logs are driven as aforesaid or may have been scaled during last winter or after. It is further hereby agreed and understood that said first party is to pay to said second party the sum of three hundred dollars additional for driving a certain lot of logs not included in first mentioned lot of logs, scattered in and along said Stony creek and said branches into said boom, along with said first mentioned logs, with the understanding that said first party is to deliver both first and second said lot of logs in said stream. Further it is hereby agreed by both said parties that said drive is to be commenced at once if sufficient natural water, or by use of splash dams. It is also distinctly understood that said logs are to be driven as said first party's man ager may direct, that is, not faster than said first party considers safe, or more at one time than said first party's boom would hold in safety, and not to be driven on such stages of water when the first party's manager considers unsafe.

" Said first party also lets unto said second party a certain lot of cross-ties, to be driven on said streams, sixteen thousand, more or less, at three cents each, if driven to Bethel, Somerset

county, and five cents each if driven to any point below Bethel, not further down, however, than slack water on Conemaugh river at Conemaugh furnace. Said cross-ties to be driven as fast and when said first party directs or decides water is at proper stage to be safe. Said ties to be driven in April, after first log drive is made, at one drive. It is further agreed and understood that said first party is to give to said second party the use of all their splash dams on said streams and that said second party is to place competent and reliable men on said dams to attend them while splashing, and should any damage be done to said first party's dams for want of proper care, then said second party is to pay said damage or put same dams in as good condition as before used. It is also hereby understood that said second party is to drive a clean rear of cross-ties and should any be left along or in said streams then said second party is to pay said first party full value for same and also pay for any logs left in or along said stream when making last drive. Said first party is to advance said second party sufficient funds or money to pay actual expenses soon as each drive is in the boom and balance within thirty days after said logs and cross-ties are all driven as aforesaid."

The following supplemental agreement was added April 4, 1889:

" It is further agreed and understood that whatever logs are not put into the Quemahoning by Tuesday next, April 8, 1889, or as soon thereafter as Mr. Gill requires or wants to commence the drive then Mr. Gill is not to be held responsible for or expected to drive them under the contract made and signed the 20th day of March, 1889, and any logs to be driven on either Dark or Clear Shade creeks not in the stream ready for Mr. Gill when he goes up, after driving on Quemahoning, then Mr. Gill is not to be responsible for the driving as under the above mentioned agreement. In every other respect the agreement made 20th of March, 1889, to be and remain in full force."

On the trial, before RAYBURN, P. J., the evidence tended to establish the following facts :

Part of the lumber specified in the contract had been driven by plaintiff according to the contract, part he had attempted to drive but, after doing some work, stopped for want of water ; some of this latter lumber was carried by the flood of May 31,

1889, into and through defendant's boom (the destination mentioned in the contract) and much of it was lost, while some of the lumber remained and never reached defendant's boom. There was a conflict of evidence as to whether after the flood plaintiff had offered to perform the contract and had not been allowed by defendant to do so.

Defendant's point, affirmed, was as follows:

"1. It appearing from the testimony that all the logs in the drive, excepting such as had been delivered at the boom in Johnstown in the 'running drive' between March 20, 1889, and April 4, 1889, were lying in Stony creek river some thirteen or fourteen miles above the boom and in the Quemahoning and Shade creeks, above that point, May 30, 1889, when the flood of May 31 came and carried away a large proportion of such logs through the boom at Johnstown, which were never recovered, and the contract in writing, between the plaintiff and defendant being an entire contract, the court should direct the jury to render a verdict for the defendant."

Verdict and judgment accordingly.   Plaintiff appealed.

*Errors assigned* were (1) affirmance of point, not quoting it; (2) construction of agreement to be entire contract; (3) refusal to submit case to jury.

*R. S. Murphy, F. A. Shoemaker* with him, for appellant.— The two contracts were to be construed together and form a severable not an entire contract: 1 Parsons, Contracts, 30, quoted with approval in Lucesco Oil Co. v. Brewer, 66 Pa. 351; Rugg v. Moore, 110 Pa. 236.

A failure to perform completely is only defence pro tanto: Gallagher v. Sharpless, 134 Pa. 134; Chambers v. Jaynes, 4 Pa. 39.

Whether there was substantial performance of the contract is a question of fact for the jury: Albert v. Frick, 1 Penny. 132; Farwell v. Kohler, 1 Penny. 94.

Officers of corporations acting as general agents bind the corporation, irrespective of corporate restrictions: Grafius v. Land Co., 3 Phila. 447.

The act of God dispenses with a literal compliance with the terms of the contract: Pollard v. Shaaffer, 1 Dallas, 210; Moyer v. Kirby, 2 Pearson, 64.

The supplemental agreement of April 4, 1889, relaxed the terms of the contract of March 20, 1889. If parties mutually relax terms of the contract neither can go back on the past and insist on a breach because not fulfilled according to the letter: Hazleton Coal Co. v. Buck Mt. Coal Co., 57 Pa. 301.

*Alvin Evans*, for appellee.—Where a contract is entire, performance must be proved: Shaw v. Turnpike Co., 2 P. & W. 454; Hall v. Rupley, 10 Pa. 231; Martin v. Schoenberger, 8 W. & S. 367; Hartley v. Decker, 89 Pa. 470; Wilson v. Lyle, 23 W. N. 309. The test of the entirety of a contract is the consideration to be paid, not the number of items: Lucesco Oil Co. v. Brewer; Rugg v. Moore, cited by appellants; but time and manner of performance and of payment must also be given weight: Reybold v. Voorhees, 30 Pa. 116. Contracts have been held entire for cutting all logs on tract of land: Pallman v. Smith, 135 Pa. 188; Gallagher v. Sharpless, 134 Pa. 134.

Voluntary abandonment of partly performed entire contract deprives party of all compensation: Ala. Gold Life Ins. Co. v. Garmany, 74 Ga. 51; 3 Am. & Eng. Enc. L. 917. Question of performance only goes to jury where there are unimportant omissions: Farwell v. Kohler, 1 Penny. 94; Albert v. Frick, Ibid. 132; Gillespie Tool Co. v. Wilson, 123 Pa. 19. Plaintiff alleges he fully performed his contract; the allegata and probata do not agree: Alexander v. Hoffman, 5 W. & S. 382; Martin v. Schoenberger, supra; Chambers v. Jaynes, 4 Pa. 43.

Act of God might excuse performance at time specified but it should be performed as soon as possible thereafter: Moyer v. Kirby, 2 Pears. 64; 3 Am. & Eng. Enc. L. 900.

OPINION BY MR. JUSTICE HEYDRICK, October 31, 1892.

The single question in this cause is whether the contract upon which the plaintiff sued is entire or severable. If it is entire it is conceded that the learned court below properly directed a verdict for the defendant; if severable, it is not denied that the cause ought to have been submitted to the jury. The criterion by which it is to be determined to which class any particular contract shall be assigned is thus stated in 1 Parsons on Contracts, 29–31: " If the part to be performed by one party consists of several and distinct items, and the price

to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable. . . . But if the consideration to be paid is single and entire the contract must be held to be entire, although the subject of the contract may consist of several distinct and wholly independent items." The rule thus laid down was quoted with approval and applied in Lucesco Oil Company v. Brewer, 66 Pa. 351, and followed in Rugg & Bryan v. Moore, 110 Pa. 236. It was also applied in Ritchie v. Atkinson, 10 East, 295, a case not unlike the present. There the master and freighter of a vessel of four hundred tons mutually agreed that the ship should proceed to St. Petersburg, and there load from the freighter's factors a complete cargo of hemp and iron and deliver the same to the freighter at London on being paid freight for hemp £5 per ton, for iron 5s. per ton, and certain other charges, one half to be paid on delivery and the other at three months. The vessel proceeded to St. Petersburg, and when about half loaded was compelled by the imminence of a Russian embargo upon British vessels to leave, and returning to London delivered to the freighter so much of the stipulated cargo as had been taken on board. The freighter, conceiving that the contract was entire and the delivery of a complete cargo a condition precedent to a recovery of any compensation, refused to pay at the stipulated rate for so much as was delivered. Lord Ellenborough said: "The delivery of the cargo is, in its nature, divisible, and therefore I think it is not a condition precedent; but the plaintiff is entitled to recover freight in proportion to the extent of such delivery; leaving the defendant to his remedy in damages for the short delivery."

Applying the test of an apportionable or apportioned consideration to the contract in question, it will be seen at once that it is severable. The work undertaken to be done by the plaintiff consisted of several items, viz., driving logs, first, of oak, and second of various other kinds of timber, from points upon Stony creek and its tributaries above Johnstown to the defendant's boom at Johnstown, and also driving cross-ties from some undesignated point or points, presumably understood by the parties, to Bethel in Somerset county, and to some other point or points below Bethel. For this work the consideration

to be paid was not an entire sum, but was apportioned among the several items at the rate of one dollar per thousand feet for the oak logs; seventy-five cents per thousand feet for all other logs; three cents each for cross-ties driven to Bethel, and five cents each for cross-ties driven to points below Bethel. But while the contract is severable, and the plaintiff entitled to compensation at the stipulated rate for all logs and ties delivered at the specified points, there is neither reason nor authority for the claim for compensation in respect to logs that were swept by the flood to and through the defendant's boom, whether they had been driven part of the way by the plaintiff or remained untouched by him at the coming of the flood. In respect to each particular log the contract in this case is like a contract of common carriage, which is dependent upon the delivery of the goods at the designated place, and if by casus the delivery is prevented the carrier cannot recover pro tanto for freight for part of the route over which the goods were taken : Wharton, Law of Contracts, sec. 714. Indeed this is but an application of the rule already stated. The consideration to be paid for driving each log is an entire sum per thousand feet for the whole distance and is not apportioned or apportionable to parts of the drive.

The judgment is reversed and a venire facias de novo is awarded.