SCULLY STEEL & IRON CO. v. OLD MEADOW ROLLING–MILL CO.

(Circuit Court of Appeals, Third Circuit. May 17, 1901.)

SALES — RIGHT TO RESCIND CONTRACT — REFUSAL OF PERFORMANCE BY OTHER PARTY.

The refusal of a purchaser of manufactured goods, to be delivered in installments, to pay for deliveries made, coupled with a denial of indebtedness therefor, and the assertion of a large and unwarranted claim for damages for nondelivery of other installments, and a notice or the purchase from others of a large quantity of the goods, exceeding the deliveries then demandable under the contract, the increased cost of which was stated to have been charged to the seller, amounted to a refusal to longer be bound by the contract, which justified the seller in treating it as terminated and making no further deliveries thereunder.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

James R. McFarlane, for plaintiff in error.

A. Leo Weil, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. Pursuant to a stipulation in writing, and under sections 649 and 700 of the Revised Statutes of the United States, this cause was tried by the circuit court without the intervention of a jury. The findings of the court upon the facts were special, and the court certified a balance in favor of the defendant under its plea of set-off, agreeably to the provision of the Pennsylvania defalcation act; the plaintiff having waived the question of the right of the court so to do. Judgment accordingly having been entered in favor of the defendant, the plaintiff sued out this writ of error.

We are of opinion that the facts found by the court are quite sufficient to support the judgment. From these findings it appears that the two contracts, one of September 7th and the other of November 25, 1898, for the sale and delivery by the defendant to the plaintiff of stipulated quantities of Bessemer steel sheets for prices and at times specified, and for the alleged breach of which by the defendant the plaintiff claimed damages, were each "contingent upon strikes and delays beyond seller's control"; that early in January, 1899, a strike began at the defendant's works, and caused a shut-down until April 12th, and that this was a sufficient cause and valid excuse for the defendant's omitting deliveries during said period; that on March 8, 1899, the defendant drew on the plaintiff a sight draft for $5,150.65, the amount of invoices then due by the plaintiff to the defendant for goods furnished under the contract of September 7, 1898; that payment of this draft was refused unjustifiably, the plaintiff, by letter to the defendant dated March 17, 1899, stating the ground of refusal thus: "Noting yours of March 8th regarding your sight draft upon us which was presented and declined, beg leave to say that our claim against your company far exceeds the amount mentioned, and each month in which you fail to deliver as per contract increases the amount;" that the plaintiff had no such

existing claim as alleged in this letter, and the asserted claim for future damages was unwarranted, for the strike was a valid excuse for nondeliveries referred to; that on March 11, 1899, the invoice of January 11, 1899, amounting to $894.14, for goods delivered under the contract of November 25, 1898, fell due, but no demand for payment was made; and that on March 23, 1899, the plaintiff wrote to the defendant as follows:

"Feeling that there is no intention on your part at the present time to carry out contracts entered into with you, we, in order to fulfill our obligations and to secure sheets for our warehouse, have finally been compelled to enter the market, and have succeeded in purchasing 600 tons for March, April, and May. * * * Our having to buy this material is entirely due to the failure on your part to deliver the sheets as per your contracts. We therefore hand you herewith our invoice, which represents the difference between the prices as per our contracts with you and prices at which these 600 tons were purchased."

In connection with this letter of March 23, 1899, the court made the following finding:

"We find that this letter was, in effect, in connection with the allegation of an unwarranted claim of damages asserted in the letter of March 17th, evidence of the plaintiff's intention, unwillingness, and refusal to pay the invoice of January 11th, then due under the contract of November 25, 1898. We further find that such refusal was without just cause, for the reason that the defendant's failure to make any deliveries under the said contract up to said date was caused by the strike, and the plaintiff had no legal claim for damages for nonfulfillment of said contract in that particular."

On March 28, 1899, the plaintiff wrote to the defendant in reference to the draft thus:

"We had every reason to refuse payment, simply because we do not owe it. On the other hand, on account of the nonfulfillment of your contract, you owe us at present a large sum, and each month amount will increase."

The court found that by the term "contract," in this letter, the plaintiff meant to include both contracts. On April 3, 1899, the defendant, in reply to said letter, wrote to the plaintiff:

"You have refused to live up to your contract with us, and thereby released us from any obligation to send you additional goods."

Accordingly no additional steel sheets were sent. The court found and held that the defendant had rightfully elected to rescind both contracts.

This is not a case of mere failure or refusal to pay for an installment of goods delivered. In connection with the wrongful refusal to pay for deliveries made, we have here on the part of the plaintiff a flat denial of indebtedness, unfounded claims for damages, a going into the market and buying steel sheets to cover deliveries not yet demandable, and the charging the defendant with the difference between the prices paid and the contract prices. By these acts and conduct the plaintiff, we think, evinced an intention on its part no longer to be bound by the terms of the contract. The court was right in regarding the plaintiff's willful and inexcusable refusal to pay, under all the circumstances, as not intended to be restricted to the overdue invoices, but as applicable, also, to deliveries yet to be made. The plaintiff's letter of March 17th wrongfully set up an existing claim for damages far in excess of the

amount of the dishonored draft, and asserted that the damages were still growing. Referring to the false claim contained in this letter, the court below well said, "We think this clearly indicates to the defendant that further deliveries would not be paid for, but would be offset by the unwarranted claim for damages." We agree with the court below that the acts and conduct of the plaintiff manifested an intention to abandon performance of its part of the contracts, and hence that the defendant was set free. These views are abundantly sustained by accepted authorities. Withers v. Reynolds, 2 Barn. & Adol. 882; Freeth v. Burr, L. R. 9 C. P. 208, 213, 214; Benj. Sales, § 593a; Tied. Sales, § 210; Rugg v. Moore, 110 Pa. 236, 242, 1 Atl. 320.

We see nothing wrong in the court's interpretation of the defendant's letter of February 22, 1899. That letter afforded no excuse for the plaintiff's acts and conduct referred to above. This record, we think, is free from error, and accordingly the judgment is affirmed.