# American Tube & Stamping Co., Appellant, *v.* Erie Iron & Steel Co.

*Contract—Sales—Goods shipped at stated periods—Refusal to deliver on failure to pay—Act of May 19, 1915, P. L. 543.*

1. Under section 457 of the Sales Act of May 19, 1915, P. L. 543, 555, where there is a contract to sell goods to be delivered by stated installments, which are to be separately paid for, and the buyer neglects or refuses to pay for one or more installments, whether the breach is so material as to justify the injured party in refusing to proceed further, depends in each case on the terms of the contract, and the circumstances of the case.

2. In such case "materiality" is not always to be governed by a simple refusal to pay; the attending circumstances are to be considered.

3. Materiality may become a question of law for the court, or of fact for the jury, as the facts of each case determine.

4. Where one party to a contract refuses to pay for an installment, and evidences an intention to jeopardize all or part of future shipments, a court is safely warranted in holding these attending circumstances material.

5. Since the Sales Act, the attending circumstances need be very slight which, with the addition of refusal to pay, will swing the scales against the wrongful acts of the purchaser.

6. Where a seller delays delivery because of transportation difficulties, and the purchaser does not rescind the contract, but elects to treat it as continuing, he cannot thereafter ignore the terms of the contract, impose new stipulations, and refuse to pay for installments delivered; and if he does so, the seller is justified in refusing to proceed with the contract and make further deliveries.

Argued April 28, 1924. Appeal, No. 105, Jan. T., 1924, by plaintiff, from order of C. P. Erie Co., May T., 1921, No. 83, refusing to take off nonsuit, in case of American Tube & Stamping Co. v. Erie Iron & Steel Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit for breach of contract in failing to deliver scrap iron to plaintiff. Before BOUTON, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Nonsuit; refusal to take off. Plaintiff appealed.

*Error assigned* was order, quoting record.

*W. P. Gifford,* of *Gunnison, Fish, Gifford & Chapin,* for appellant, cited: Spring Coal Co. v. Coal Co., 97 Conn. 116; Helgar Corp. v. Warner's Features, 22 N. Y. 449.

*C. H. English,* with him *J. B. Brooks* and *F. B. Quinn,* for appellee, cited: Rugg & Bryan v. Moore, 110 Pa. 236;

Truitt v. Lumber Co., 73 Pa. Superior Ct. 445; Guaranty Motors Co. v. Sales Co., 264 Pa. 557.

OPINION BY MR. JUSTICE KEPHART, May 19, 1924:

Section 45 of the Sales Act, as applied to the facts, is decisive of the question before us, which may be stated, Was the failure to pay for an installment of goods, shipped at stated periods, such a material breach as to justify the vendor in refusing to proceed further with the contract? The court below, on the following facts, decided it was:

The vendor sold to the purchaser one thousand tons cast scrap, delivery to be made f. o. b. Bridgeport, Conn., in ninety days, at thirty dollars a net ton, the terms of payment being net cash in thirty days; vendor reserving the right to cancel all or any portion of the sale in event of an embargo or disturbing railroad conditions. Under this order, 482 tons were shipped. The last two cars were not paid for, and, after some correspondence, the purchaser went into the open market and bought 518 tons; in doing so it claims that it was damaged, through increased price, to the extent of about $6,000.

The contract ordinarily should have been performed by the 8th of March, but, owing to an embargo on the railroad, difficulty in transportation, and other incidental matters, the vendor did not complete delivery within the time specified. The purchaser, however, did not elect to rescind the contract for this reason, as it might have done, and sue for the damages occasioned, but affirmed the contract. It recognized, in writing, the difficulties the vendor met with through embargo and other transportation matters, and elected to treat the contract as a subsisting obligation, assuming that at any time it might have terminated it. But, in doing so, the buyer pretended to act as a judge to prescribe a punishment for the vendor's failure to perform in the future, clearly contrary to the terms of the contract, amounting to a repudiation of it.

Section 45 of the Sales Act (1915, P. L. 543, 555), provides, "Where there is a contract to sell goods to be delivered by stated installments, which are to be separately paid for, and......the buyer neglects or refuses ......to pay for one or more installments," "whether the breach......is so material as to justify the injured party in refusing to proceed further" "depends in each case on the terms of the contract, and the circumstances of the case." Materiality "depends on the terms of the contract, and the circumstances of the case." Had the act intended "neglect" or "refusal to pay" to alone control, it would have been unnecessary to add "and the circumstances of the case," though a contract may be so worded as to control definitely the latter.

Whatever may have been the law as it existed prior to the passage of the act, "materiality" is not always to be governed by a simple refusal to pay. In addition, the many and varied attending circumstances aid in solving the question; of these we will speak later. Materiality may become a question of law for the court, or of fact for the jury, as the facts of each case determine. Where the facts are undisputed, or the inferences and conclusions are to be found from writings, the court must decide the question of materiality as a matter of law. Such is the situation presented by this record.

The purchaser, having elected to treat the contract as alive, sought to impose new obligations and conditions contrary to the terms of the contract it was seeking to enforce. Without a semblance of justification after it had acknowledged the difficulty "in the way of embargoes and other transportation problems," the purchaser deliberately withheld payment for the last two cars of scrap. This act of itself might not have been sufficient to warrant the vendor in declining to make further shipments. The reason offered for nonpayment was not that damages had really been suffered; there was nothing to show a cent had been paid for scrap at that time or any need to go into the market to buy, through the seller's

neglect, or that the market price at the time of repudiation was in advance of the contract price. The purchaser, however, served notice it proposed to "continue to hold up payments until we get concrete assurances that deliveries will be completed within the sixty days from date." This demand not only ignored the terms of the contract, both as to payment and seller's right to cancel, but later the purchaser amplified its demand by submitting an entirely new proposition, calling for less tonnage, a different time of payment and shipment, with the stipulation that payments would be withheld as a guarantee against the seller's performance of the conditions therein enumerated. The materiality, then, of the refusal to pay is at once apparent; it was a repudiation of the contract between the parties. The refusal to pay embraced not only the amount then due and payable, but all succeeding amounts were subjected to the hazard of payment or a lawsuit. The vendee could not affirm the contract, ask for its enforcement, and, at the same time, deny its obligation to be bound.

While delivery and payment were not concurrent, they at least were dependent covenants, separated in point of time. Where one party to a contract refuses to pay for an installment, and evidences an intention to jeopardize all or part of future shipments, a court is safely warranted in holding these "attending circumstances" material. This was not a trivial mistake or slight delay in payment. It was a substantial denial of payment that struck at the whole contract, accompanied by a demand for additional terms and conditions clearly unwarranted, and contrary to the terms of the original undertaking.

Ordinary business methods demand prompt payment within the time specified. It is the only orderly way to conduct any business. Prompt collection is half the battle of success. Banking institutions lend working capital on it, and large business engagements are controlled by it. And while the act, inferentially at least, would seem to declare the mere failure to make one payment cannot be seized as a reason to cancel the entire contract

without the added weight of other attending circumstances, the refusal to pay is by far the strongest element in the repudiation. Heretofore we have held it warranted a rescission of the contract: Reybold v. Voorhees, 30 Pa. 116; Rugg & Bryan v. Moore, 110 Pa. 236; Truitt v. Guenther Lumber Co., 73 Pa. Superior Ct. 445.

Since the Sales Act, the attending circumstances need be very slight which, with the addition of refusing to pay, will swing the scales against the wrongful acts of the purchaser. We should not set up a rule which would compel a vendor, who sells on installment deliveries, to continue to ship when his purchaser persistently refuses to pay within the time specified. See 1 Uniform Laws Annotated, 158, 160. Also Johnson Forge Co. v. Leonard, 3 Pennewill (Del.) 342, 51 Atl. 305, 94 Am. St. Rep. 86, 57 L. R. A. 225; 13 C. J. 655; L. S. & M. S. Ry. Co. v. Richards, 152 Ill. 59, 38 N. E. 773; Williams v. Perrotta, 95 Conn. 529, 111 Atl. 843; Dow Chemical Co. v. Detroit Chemical Works, 208 Mich. 157, 175 N. W. 269, 14 A. L. R. 1200, annotations 1209.

Where the facts are not in dispute, courts should not hesitate to seize on slight attending circumstances to relieve under conditions of this kind. In Monroe v. Diamond, 279 Pa. 310, section 45, of the Sales Act was discussed, in which it was said (p. 312), "The question as to whether or not defendant was materially injured by plaintiff's breach, 'depends . . . . . . [not only] on the terms of the contract, . . . . . . [but also on] the circumstances of the case,' and this must be so in every broken contract of sale. Hence the law which seeks to remedy the wrong actually done, now wisely conditions the relief on the materiality of the breach, as thus determined, and not merely on the form of the contract."

The court below was clearly right in holding as a matter of law the refusal to pay, contrary to the terms of the contract, supplemented by the attending circumstances, was a material breach authorizing the vendor to refuse to further proceed with the contract.

The judgment of the court below is affirmed.