## Hickman, Williams & Co. v. Wayne Steel Co., Appellant.

*Contracts—Sales—Rescission—Damages—Province of court and jury—Market price—Evidence—Act of May 19, 1915, P. L. 543.*

1. Where a vendee is in default, the vendor may rescind the contract and recover the difference between the contract price of the article sold, and its current or market price, at the time and place fixed for its delivery.

2. Section 45, second, of the Sales Act of May 19, 1915, P. L. 543, 555, does not prevent the court from determining the materiality of a breach of contract, where only written evidence is to be considered; under such circumstances the meaning and effect of the writings must be decided by the court, as in other cases.

3. Where there are no market quotations of an article, its current or market price, when this becomes important, may be proved by the evidence of witnesses having knowledge on the subject.

4. Under such circumstances, evidence is admissible to show how the current or market price was determined in the particular business, at the time under consideration.

Argued April 28, 1924. Appeal, No. 234, Jan. T., 1924, by defendant, from judgment of C. P. Erie Co., May T., 1920, No. 186, on verdict for plaintiff, in case of Hickman, Williams & Co. v. Wayne Steel Company. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit for breach of contract of sale. Before HIRT, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $6,819.81. Defendant appealed.

*Errors assigned* were, inter alia, ruling on evidence and refusal of judgment for defendant n. o. v., quoting record.

*W. P. Gifford,* of *Gunnison, Fish, Gifford & Chapin,* for appellant, cited: Riddle Co. v. Taubel, 277 Pa. 95; Price v. Beech, 20 Pa. Superior Ct. 291; Poland Ice Co. v. Connor, 24 Pa. Superior Ct. 493; Goff-Kirby Coal Co. v. Coal Co., 31 Pa. Superior Ct. 60; Canavan v. Neeld & Foley, 189 Pa. 208.

*J. Henry O'Neill,* with him *H. V. Blaxter* and *Brooks, English & Quinn,* for appellee, cited: Seward v. Mfg. Co., 266 Pa. 457; Lally v. R. R., 215 Pa. 436; Stocker v. Schneider, 228 Pa. 149.

OPINION BY MR. JUSTICE SIMPSON, May 27, 1924:

Defendant appeals from a judgment entered on a verdict in favor of plaintiff. The case is of a dual character. Plaintiff sued to recover for certain pig iron, sold and delivered by it to defendant, for which the latter had not paid, and for damages arising from defendant's refusal to accept the full amount contracted for. On this branch of the case the only question to be decided is whether or not the court below erred in giving binding instructions for plaintiff. Defendant counterclaimed to recover damages for the breach by plaintiff of a contract to purchase certain steel ingots, part of which plaintiff refused to accept; the damages were allowed, and the only point open on this phase of the controversy, is whether or not the evidence of a certain witness was admissible to show the value of the unaccepted ingots.

The parties agree as to the terms of the pig-iron contract, what was done under it, and as to all the details regarding defendant's liability, if it was liable for any-

thing. The only point in issue is: "Does the written evidence disclose such a breach of contract, on the part of defendant, as to justify binding instructions for plaintiff?" The court below, as it was bound to do, instructed the jury as to the effect of those writings; our duty is simply to decide whether or not its interpretation of them was correct.

Defendant being in default in giving shipping instructions, plaintiff (which was liable to the owner of a furnace from whom it had purchased the iron for delivery to defendant) urged that some arrangement be made at once regarding its acceptance. In settlement of the default the parties agreed, as a substituted term of the contract, that, beginning November 22, 1920, one car a week should be delivered. On December 4, 1920, defendant wrote that it would "be unable to accept or unload any [additional] shipments of pig iron......until further notice." Plaintiff thereupon asked to be advised "by return mail just when we may resume shipping again." Defendant did not reply to this letter, but, upon a second inquiry being made, stated, "We do not expect to commence operating in this department before February, 1921. We will advise you, however, in plenty of time to get shipments coming to us in time for our needs." This attempt by defendant to make performance depend on its "needs" only, and not on the terms of the contract, was not satisfactory to plaintiff; and hence, on December 29, 1920, it wrote defendant: "We can no doubt arrange with the furnace to ship the iron in the month of January, and we will ship in that month unless in the meantime we can make other arrangements that are agreeable and satisfactory to the furnace and to yourselves." Defendant rejected this offer and wrote stating, "We have issued instructions withholding shipment on all materials and it will be impossible for us to deviate from these at the present time." This was a distinct refusal of plaintiff's offer of compromise, and left defendant's wrongful breach unaffected; the former thereupon

rescinded the contract, and brought suit. Mercantile agreements also would become mere "scraps of paper," if the law tolerated such conduct.

But, says appellant, this was a matter to be decided by a jury, and not by the court, and cites to us section 45, second, of the Sales Act of May 19, 1915, P. L. 543, 555, which provides that, "Where there is a contract to sell goods to be delivered by stated installments, which are to be separately paid for, and the seller makes defective deliveries in respect of one or more installments, or the buyer neglects or refuses to take delivery of or pay for one or more installments, it depends in each case on the terms of the contract, and the circumstances of the case, whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for a breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken."

It will be observed, however, that the statute does not disclose the slightest intention of taking from the court the duty of construing writings, and of giving binding instructions in accordance therewith, where, as here, there is nothing in the evidence to qualify their conclusive effect. It would be strange indeed if a purchaser might admittedly breach his contract, simply because it was not convenient for him to comply with it, and yet ask a jury to say whether or not the breach was material. Monroe v. Diamond, 279 Pa. 310, was a typical case where the question of materiality was doubtful, and hence the court below was affirmed for submitting it to the jury; the present is a typical one where no possible doubt can exist, for here "the terms of the contract [are undisputed], and the circumstances of the case," so far as they relate to defendant's duty and its breach thereof, are no less fixed. It is not necessary to further consider the point; it is fully discussed in the American Tube and Standard Co. v. Erie Iron and Steel Co., 281 Pa. 10.

As already stated, the only question raised, on the second branch of the case, relates to the competency of a witness to testify as to the value of the steel ingots which defendant manufactured for plaintiff and the latter refused to accept. When the court below decided that the refusal was not justified (a conclusion not now disputed), the only open matter was the question of damages, and this was governed by section 64 of the Sales Act, supra, which provides that, under the circumstances stated, "the measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract," and this, "where there is an available market for the goods in question," is ordinarily to be measured by "the difference between the contract price and the market or current price" at the time and place fixed for delivery.

The parties agreed there were no market quotations for ingots; because of this, defendant alleged they had no market value, but were useful only for scrap, which, at $20 per ton, the price fixed by it, made them worth considerably less than the market price of the pig iron from which the ingots were made. This depreciation was not claimed to be due to a lack of quality in the pig iron or the ingots, for defendant purchased the one, made the other, and was responsible for the quality of each.

To meet defendant's evidence as to the value of the ingots, plaintiff called the witness to whom reference has been made. In all other respects he agreed with defendant, but said there was a market price for ingots, although there were no quotations of it in the trade journals. His testimony was that their value was greater than the pig iron, from which they were made by defendant, and less than the billets, into which they were to be made by plaintiff. He also said there was a differential, somewhat variable, within reasonably fixed limits, depending on the value of pig iron at the time of manufacture, from which its enhancement in value, when converted into ingots, could always be determined. Apply-

ing this rule, he said that, since the value of the pig iron, at the time of the breach, was $35 per ton, the then market value of the ingots was $40 per ton. In view of the admitted facts that there were no trade quotations for ingots, this evidence was clearly admissible. True, it introduced, to some degree, the cost of manufacture, which ordinarily is not considered in determining the actual value of the thing manufactured. If, however, as the witness testified, the market price of ingots in this trade can always be determined in the way stated, it would have been error to exclude the testimony. Its weight was, of course, for the jury; to this tribunal it was submitted in a charge to which no objection is made.

The judgment of the court below is affirmed.