HENRY STEWART
v.
LEWIS D. MANY.

1. CONTRACT—VERDICT AGAINST EVIDENCE.—The action was for failure to comply with the terms of a contract entered into between plaintiff and defendant. Although the testimony of the witnesses, while tending to disprove the modified contract, as claimed by the plaintiff, may not be sufficient to warrant the court in setting aside the verdict, yet, the surrounding circumstances, the acts of the parties and their correspondence regarding the business, tends strongly to show that no such contract as claimed by plaintiff, was made.

2. MODIFICATION OF CONTRACT.—The plaintiff claimed damages for a failure to send to him a certain number of sewing machines per week, according to the terms of a modification of a certain contract. *Held*, that even conceding that the original contract was modified, as claimed by plaintiff (about which there was a dispute), yet the terms of the original contract, except as modified, remained the same, and one of these being that machines should be sold for cash and remittances promptly made, and the plaintiff failing to remit promptly, the defendants was not under obligation to send machines according to the alleged modified agreement.

ERROR to the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding. Opinion filed December 13th, 1880.

This was an action of assumpsit, brought by Lewis D. Many against Henry Stewart, to recover damages for the breach of certain contracts set out in the declaration.

Stewart v. Many.

The first count of the declaration alleges that on the first day of July, 1877, at the county of Cook, by a certain agreement then and there made between the plaintiff and defendant, the plaintiff agreed to act as the agent of the defendant, to establish and build up for the mutual benefit and profit of the plaintiff and defendant, a permanent business at Chicago, for the sale throughout the entire western portion of the United States, of the defendant's sewing machines, commonly known as "The Stewart Singer Sewing Machine," and defendant's sewing machine attachments, and to remit the moneys arising from such sales, less his charges and commissions, to the defendant, at the city of New York; that the defendant, on his part, agreed to ship to the plaintiff, at Chicago, for the purposes of said business, ten machines each day, from and after said first day of July, 1877; that on said day, the plaintiff entered upon the performance of said agreement, and by labor, care and diligence, and the expenditure of a large sum of money, to-wit: $2,000, built up a large and lucrative business in Chicago in the sale of said sewing machines and attachments, and remitted to the defendant at New York, all moneys arising from said sales, less his charges and commissions, and has at all times been ready and willing, and has offered to perform and fulfill all things on his part to be performed and fulfilled; yet the defendant, contriving and wrongfully intending to deprive him of the rewards of his labor, care and diligence, and of the gains and profits of said business, wholly failed to ship to the plaintiff at Chicago ten machines each day, as by said agreement provided, and refused to permit the plaintiff to prosecute said business or to carry out said agreement, and on the 7th day of January, 1878, wrongfully discharged the plaintiff from said agency, whereby he has been deprived of large gains profits, advantages, etc.

The second count is in all respects like the first, except that it alleges an agreement made September 15, 1877, by which the defendant agreed to ship to the plaintiff one hundred machines each week.

The third count alleges an agreement between the parties entered into January 11, 1877, by which the plaintiff agreed to

act as the agent of the defendant at Chicago, for the sale of said sewing machines throughout the West, and of building up and establishing a permanent business as such agent, for certain commissions and rewards, to be paid him by the defendant; that the plaintiff has always, from the time of making said agreement, performed and fulfilled the same, yet the defendant altogether failed to pay the plaintiff said commissions and rewards, although often requested, etc.

The declaration also contained the usual *indebitatus assumpsit* counts for work, labor and services, goods sold and delivered, money lent and advanced, money paid, laid out and expended, and upon an account stated.

The defendant pleaded non-assumpsit, and also a plea of set-off, alleging an indebtedness from the plaintiff to him upon an account for merchandise, on which a balance of $1,306.68 was claimed to be due the defendant. The jury, at the trial, found the issues for the plaintiff, and assessed his damages at $2,483.32, and for this sum and costs, judgment was rendered against the defendant.

The evidence shows that, on the 11th day of January, 1877, the defendent was engaged in the manufacture and sale of sewing machines in the city of New York, and for the purpose of opening an office in Chicago for the sale of his machines, he and the plaintiff entered into the following contract :

"NEW YORK, January 11, 1877.

" Memorandum of an agreement between Henry Stewart and Lewis D. Many, both of the city of New York :

" Lewis D. Many will go to Chicago, Illinois, and there open an office for the sale of sewing machines and other goods, made by Henry Stewart, and will diligently labor to sell and introduce said goods into that and the entire Western market.

"And Henry Stewart will pay him for said services at the rate of twelve dollars per week, and a further commission of one dollar upon each machine sold by him.

" Said Lewis D. Many is to sell for cash, and at such prices as shall be fixed from time to time by said Henry Stewart, and to make prompt remittances of the proceeds to said Stewart.

"Said Henry Stewart to pay the office expenses, and such reasonable traveling expenses as may be incurred in the prosecution of the business.

" This agreement to continue one year from this date.

"Henry Stewart,

"Lewis D. Many."

Shortly after the execution of this contract, the plaintiff, Many, in ' pursuance thereof, came to Chicago, opened an office, and embarked in the sale of sewing machines for Stewart, and continued such business until some time in June following, when, by mutual agreement, the contract was so changed that, from that time, the sewing machines were to be consigned to Many at a fixed price, and Many was to sell them for such additional price as he could obtain, taking such additional price for his compensation, and paying his own expenses. Many claims that, at the same time, as a further modification of the contract, Stewart agreed to furnish him machines from and after July 1, 1877, at the rate of ten a day. He also claims that in September following, the contract was further modified, by Stewart's agreeing to furnish him machines at the rate of one hundred per week, from and after the 15th day of that month. The last two modifications of the contract 'are denied by Stewart.

After the first day of July, Stewart continued to furnish Many with sewing machines under the new arrangement, although the number furnished between that time and the 15th day of September was considerably less than an average of ten machines per day, and after the 15th of September the number furnished was less than one hundred' per week. The record contains a large amount of correspondence between the parties, covering the entire period of their transactions, from which it appears that Many was constantly importuning Stewart for more machines to fill orders which he was receiving from his customers, while Stewart was almost as constantly complaining of Many's lack of promptness in making remittances of the proceeds of his sales, and explaining his unwillingness to send machines faster, by the fact that Many was so largely behind in his remittances.

In January, 1878, at the time the contract expired, Many visited Stewart in New York, with the expectation of getting the contract renewed for another term. At that time the books of account of Many and of Stewart agreed in showing a balance due from Many to Stewart of $1,306.68, and there was no dispute between the parties as to any of the items of the account, or as to the amount due Stewart. As part payment of this amount, Many, while in New York, gave Stewart a check for $300 on his bankers in Chicago, but failing to get the contract renewed, Many, on his return to Chicago, stopped payment of the check, and subsequently, on the occasion of a visit by Stewart to Illinois, instituted against him the present suit.

The ground of action set up by the plaintiff, upon which the verdict of the jury was principally, if not wholly, based, was the failure of Stewart to furnish the full number of ten machines per day from July 1st to September 15th, and one hundred per week from September 15th to the termination of the contract, and the consequent loss by Many of the profits which he would have derived from the sale of said machines. A few small items of expenses, charged by Many prior to July 1st, amounting to $444.97, but which Stewart refused to allow, are in dispute, but with the exception of these, the plaintiff's entire cause of action consists of his anticipated profits on the machines which the defendant, as he claims, agreed, but failed to furnish.

Mr. FRANK BAKER, for plaintiff in error.

Mr. C. M. HARDY, for defendant in error.

BAILEY, J. The jury, by their verdict, have necessarily found that by a modification of the contract between the parties, made in June, 1877, the defendant agreed to furnish the plaintiff with sewing machines, from and after July 1st, at the rate of ten per day, and that by a further modification made in September, the defendant agreed to furnish the plaintiff with such machines from and after September 15th, at the rate

of one hundred per week.  The first question presented for our consideration is, whether this finding is supported by the evidence.

Both parties agree that the original contract was modified in June, so as to provide that the plaintiff thereafter should take the machines sent by the defendant at a fixed price, pay his own expenses and retain for his compensation any profits he might be able to make by their sale.  The plaintiff claims that the agreement to send him ten machines a day after July 1st, was a part of this modification.  This new agreement, whatever it was, was made between the plaintiff and defendant orally, while the plaintiff was on a visit to New York.  The plaintiff swears that, as a part of the new arrangement, the defendant agreed to send him machines at the rate of ten a day, while the defendant swears that no such agreement was made.  Two other witnesses then in the employ of the defendant, testify that they were present when the new contract was entered into, and heard the conversation between the parties, and that nothing was said in their presence about the defendant's sending ten machines a day.  The plaintiff, it is true, swears to various conversations between himself and the defendant in the course of the negotiations when these two witnesses were not present, in which this promise was made.  Did the case rest solely upon the testimony of these witnesses, while we should be inclined to think that the preponderances would be in favor of the defendant, we might not regard the preponderance so clear as to justify a reversal of the judgment on that ground.

But there are various circumstances appearing in the record which, in our opinion, are strongly corroborative of the testimony of the defendant.  Of the mass of letters from the plaintiff to the defendant in evidence, and especially those written after July 1st, a large proportion are filled with representations that the plaintiff was much behind-hand in filling the orders from his customers for machines, and with solicitations and entreaties to the defendant to send machines more rapidly.  Many of them contain serious complaints against the defendant for his tardiness in making shipments, and yet

we fail to find in any of these letters any distinct allusion to an agreement on the part of the defendant to furnish a given number of machines, or any complaint that the defendant was remiss in the performance of his contract. If the defendant, in failing to send machines as fast as the plaintiff desired, was all the while violating the terms of an express agreement, it is certainly very extraordinary that the plaintiff, in his constant and pressing importunities for more machines, did not, in some way, place his demand upon the ground that he had a right under his contract to a larger number, or at least to remind the defendant of his contract obligations.

It further appears that no claim was made by the plaintiff for profits on sales of the machines which the defendant failed to furnish under this alleged contract, until some time after the refusal of the defendant to extend his contract for another term. On the contrary, the plaintiff rendered to the defendant periodically statements of his account, and in such statements there were no charges for such profits, nor were they accompanied by any suggestion that a claim would ever be made by the plaintiff therefor. At the time the contract expired the plaintiff's books of account agreed precisely with those of the defendant, both showing a balance in the defendant's favor of $1,306.68. When the parties met in New York in January, 1878, the defendant rendered to the plaintiff a statement of account showing this balance, and the plaintiff, without objecting to any part of it, or claiming any reduction or set-off, by reason of the failure of the defendant to perform his contract, gave the defendant his check for $300 to apply upon said balance. These facts are wholly inconsistent with the theory that there was then outstanding a claim in favor of the plaintiff, growing out of these very dealings, sufficient not only to cancel the balance against him on his and the defendant's books, but also to create a balance in his favor of $2,483.32, the amount found by the jury. In our opinion, the evidence on the question as to whether the alleged contract to furnish the plaintiff with ten machines per day was ever made, when viewed in the light of surrounding circumstances, and especially of the plaintiff's own conduct, so

Stewart v. Many.

strongly preponderates in favor of defendant, that the verdict of the jury ought not to stand.

Much that we have already said applies with equal force to the evidence of the alleged agreement of September 15th, to furnish one hundred machines per week. The conduct of the defendant throughout was inconsistent with the theory that any such agreement ever existed. But the direct evidence here is, as it seems to us, much weaker than that introduced in support of the other agreement. As before, we have the evidence of the plaintiff and defendant directly in conflict. The plaintiff's account of the making of this modification of the contract, as given by him in his direct testimony, is in the following language: " In September, when I told him I had an opportunity of taking another agency, that unless the machines came faster it would not pay me to run the business, he told me that, of course, increasing his facilities as soon as he could in the manufacture of them, he would give me all the machines I could sell; and he said there would be no doubt but that he could send me one hundred a week soon. That was the arrangement." Here, manifestly, is no evidence of a promise, but a mere expression of opinion or assurance on the part of the defendant of his ability and disposition to meet the plaintiff's requirements, after having increased his facilities for manufacture. True, the plaintiff, in attempting on cross-examination, to re-state the same conversation, gives the defendant's language as follows: " I will send you a hundred a week after this; " but the force of this statement is greatly weakened by the widely different version of the same conversation given on direct examination.

But even assuming this to be sufficient evidence of a promise, we are unable to perceive any consideration therefor sufficient to make it binding upon the defendant. The plaintiff yielded up no right which he already possessed, and entered into no new engagement with the defendant.

There is, however, another ground upon which the defendant is, in our opinion, entitled to a reversal of the judgment. Even if it should be held that the evidence is sufficient to establish these agreements on the part of the defendant to furnish the

plaintiff a stipulated number of machines per day or week, the defendant was, under the circumstances proved, excused from its performance. These agreements, as it is conceded, were entered into as mere modifications of the original contract, and the terms of that contract, so far as they remained unchanged, continued in force and binding upon the parties. One of the terms of the original contract which was not changed or set aside by the new agreements, was the one requiring the plaintiff to sell the machines for cash and make prompt remittance of the proceeds to the defendant. This was the mode in which the plaintiff undertook to perform the business of his agency, and his right to call upon the defendant to consign to him machines for sale, depended upon the fidelity with which he adhered to that mode in the transaction of said business.

The evidence shows very conclusively that the plaintiff came far short of selling machines for cash and making prompt remittances of the proceeds to the defendant. It appears that during the entire year, he received orders from his customers for machines more rapidly than he could fill them, so that the machines were almost uniformly sold by him as soon as received, yet nearly all the time he was largely in arrears and indebted to the defendant. Thus, on the 1st day of July, he was owing the defendant $1,064; on the 1st day of September, $1,938.05; on the 1st day of October, $2,077.27, and on the 6th day of November, $2,714.62. At the expiration of the contract, this indebtedness had been reduced to $1,306.68. While it is true that these several balances include the value of machines on hand and *in transitu*, it is apparent that large sums were continually owing on account of machines sold and delivered, but for which the proceeds had not been remitted.

. The defendant's letters to the plaintiff are replete with complaints of the plaintiff's tardiness in remitting the proceeds of sales, and with urgent appeals to him to send forward the money, and thus reduce his account. In several letters the defendant bases his refusal to forward machines more rapidly, upon the defendant's failure to remit according to his contract, and upon the large amount of his indebtedness already accumulated.

It appears that the plaintiff, at the time he commenced to do business for the defendant, was a man entirely without means or pecuniary responsibility. The defendant's only safety in dealing with a man thus situated, was in insisting upon cash sales and prompt remittances. The plaintiff's agreement in that behalf was of the very essence of the contract. It would be singularly inequitable, under these circumstances, to hold the defendant bound to continue the consignment of machines to the plaintiff, to the full extent of the contract, while the plaintiff was refusing or neglecting to account for and turn over the proceeds of his sales as provided by the same contract.

We are of the opinion, then, that the verdict of the jury was unwarranted by the evidence, and the judgment will accordingly be reversed and the cause remanded.

Judgment reversed.