STEELE ET AL. V. MILLS ET AL.

1. **Principal and Surety:** VARIATION OF CONTRACT: DISCHARGE OF SURETY: EXCEPTION TO RULE: EXAMPLE. It is a fundamental principle of the law of principal and surety that any new contract upon a sufficient consideration, materially varying the original undertaking, and made between the principal parties without the knowledge and assent of the surety, will amount to a complete discharge of the surety. But where the new contract is for any reason nugatory the principle does not apply. And so, where there were three obligees in a bond given to secure the performance of a non-negotiable contract, and two of them assigned their interest in the contract to the plaintiffs, and the remaining obligee and the principals in the bond, without the knowledge of the sureties, entered into a new contract, materially varying the contract secured, and this was done, presumably, with knowledge by the principals in the bond of the rights of the assignees, and without the knowledge or assent of the assignees, *held* that such new contract was not binding upon the assignees, and that it did not discharge the sureties in the bond from liability in a suit thereon by the assignees.

2. **Lease of Coal Land:** ASSIGNMENT OF MONTHLY PAYMENTS: NATURE OF CLAIM: EQUITIES AGAINST ASSIGNOR. An assignment of the monthly royalties payable as rent under a coal lease is not the assignment of an open account, (Code, § 2087,) but of a right under a contract; (Code, § 2082;) and the assignor is bound only by equities which the lessees had against the assignor before *notice* of the assignment, and not by equities arising before *suit brought* upon the assignment.

3. ———: ———: EQUITIES AGAINST ASSIGNEES: PLEADING AND PROOF. Where two of the lessors assigned their interest in the lease to plaintiffs, and afterwards the remaining lessor entered into negotiations with the lessees changing the terms of the lease, in a suit by the plaintiffs against the lessees' bondsmen to recover money due on the original lease, *held* that,

if the defendants proposed to rely on the validity of the alterations made in the lease, it was incumbent on them to allege and prove that the lessees, when they agreed to the alteration, had no notice of the assignment.

4. **Finding of Court**: EVIDENCE TO SUPPORT. A finding of fact by the court in a law action will not be disturbed when there is any evidence to support it.

5. **Contract**: NOT NEGOTIABLE: ASSIGNABLE. A contract which makes no provision for assignment is nevertheless assignable, under Code, § 2084.

*Appeal from Monroe District Court.*

FRIDAY, MARCH 19.

THIS is an action at law, by which the plaintiffs seek to recover of the defendants some $1,200 upon an alleged liability as sureties on a bond. There was a trial to the court without a jury, and a judgment was rendered for the plaintiffs. Defendants appeal.

*Geo. W. Lafferty, Wm. McNett* and *Anderson & Anderson,* for appellants.

*Perry & Townsend,* for appellees.

ROTHROCK, J.—The case is exceedingly complicated in its facts. We will, as briefly as may be, set out such a statement as we believe to be sufficient to an understanding

1. PRINCIPAL and surety: variation of contract: discharge of surety: exception to rule: example.

of the questions necessary to a determination of the rights of the parties. On the twenty-fourth day of December, 1881, Aaron, William and Martin Hicks leased to Joseph Mickle, Henry Wiswell and William Battin certain coal land and mines in Monroe county. The lease was in writing, and was to continue for fifteen years, at a royalty of twenty-five cents a ton on coal mined, payable for each month on the twentieth day of the succeeding month. The lessees were bound to pay $420 per month as a minimum rental, whether coal for that month was taken out or not. The lease provided that the lessees

should give a bond in the sum of $10,000, with sureties, con-ditioned that the lessees should pay to the lessors all damages that should accrue to them by reason of a failure on the part of the lessees to perform all the conditions of the lease.   At the same time that the contract of lease was executed, and as part of the same transaction, the said lessees, with W. D. Mills and B. T. Fredericks as their sureties, gave a bond conditioned as follows: " Now, therefore, if the parties princi-pal in this bond shall pay all rent and royalty stipulated in said contract to A., W. and M. Hicks, as the same shall become due, and shall perform faithfully all and singular the covenants, conditions and stipulations of said contract, and shall pay to A., W. and M. Hicks all damages which may accrue to them by reason of a failure on the part of the principals herein to pay said rent and royalty as the same become due, or by reason of their failing to faithfully perform all the conditions, stipu-lations and covenants of said contract, then this bond is to be void; otherwise to be in full force and effect."   On February 17, 1883, Aaron Hicks and William Hicks, two of the lessors, assigned in writing all their interest in the lease to one Doug-las.   The written assignment expressed their interest as " two-thirds of the rental of the same."   On April 19, 1883, one Cassady recovered judgment against T. S. Tharp and Wil-liam and Aaron Hicks for some $1,600, and on September 1, 1883, Douglas assigned to Martin Hicks all the interest he had received under his assignment from William and Aaron Hicks.   This last assignment vested all interest in the lease and royalties in Martin Hicks.   December 19, 1883, Martin Hicks assigned to Cassady the two-thirds of said royalty which had been assigned to him by Douglas, as collateral security for the payment of the judgment in favor of Cassady, and on the same day, and subject to the last-named assign-ment, Martin Hicks assigned to the plaintiffs Perry & Town-send one-half of the undivided two-thirds of the royalty acquired by him from Douglass, accrued since that time up to the date of the assignment, and such as should accrue in

the future.   On the twenty-fifth of January, 1884, Cassady assigned his judgment to the plaintiff Lucy M. Steele, and with it the assignment of royalties he had received from Martin Hicks.

In October, 1884, Lucy Steele and Perry & Townsend brought suit against Mickle, Battin and Wiswell, the lessees, and in the same month recovered judgment against said lessees for $1,211 and costs, to be applied, when collected, (1) to the payment of the Cassady judgment; (2) to Perry & Townsend; and (3) to Douglas.   This judgment embraced the two-thirds of the royalty of $420 per month which accrued from January 1, 1884, to May 6, 1884, the time at which the lease was finally canceled and surrendered.   The sureties on the indemnity bond were not made parties to that suit. The present action was brought in January, 1885, against the sureties and their principals to recover against the sureties for the same royalties for which judgment had been rendered against the principals in the bond.   The sureties defended the action, and the defense upon which they rely for a reversal of the judgment against them is based upon a written contract between Martin Hicks and the original lessees, Mickle, Battin and Wiswell, on the eighth day of March, 1884, by means of which it is alleged the original lease was so changed and modified, without the knowledge of the sureties, as to operate as a release and discharge of the sureties from all obligation on the bond.

This new contract was signed by Martin Hicks and by Mickle, Battin and Wiswell.   It is not necessary to set out the contract here.   It is sufficient to say that it was such a material and radical change of the original lease as to fully discharge the sureties on the bond under well-known rules of the law everywhere recognized, provided the parties to the new agreement were capable, or rather had the power or authority, to enter into a contract prejudicial to the rights of the assignees, Perry & Townsend and Lucy M. Steele.   In other words, it is a fundamental principle of the law of principal and

surety that any new contract upon a sufficient consideration, materially varying the original undertaking, and made between the principal parties without the knowledge and assent of the surety, will amount to a complete discharge of the surety. The question in this case is, did the plaintiffs, who were assignees, have such a vested right in the royalties as that the principals in the bond could make no contract with Martin Hicks which would be binding upon the plaintiffs? It is apparent that, so far as the rights of Hicks were involved, he had no authority to contract as to anything but the one-third interest then held by him; and it is equally true that if Mickle, Battin and Wiswell, when they entered into the new contract, had such notice of the rights of the plaintiffs, as assignees, as was binding upon them, they could enter into no contract prejudicial to the rights of the plaintiffs as against not only themselves, but the sureties on the bond. The defendants averred in their answer, and proved upon the trial, that they had no knowledge of the new contract until long after it was made. They did not aver nor prove that their principals, Mickle, Battin and Wiswell, had no notice, when they entered into the subsequent contract with Martin Hicks, that the plaintiffs herein were the owners, by assignment, of two-thirds of the royalties which they now claim.

It is provided by section 2084 of the Code that "bonds, due-bills, and all instruments in writing, by which the maker promises to pay another, without words of negotiability, a sum of money, or by which he promises to pay a sum of money in property or labor, or to pay or deliver any property or labor, or acknowledges any money or labor or property to be due, are assignable by indorsement thereon or by another writing, and the assignee shall have a right of action in his own name, *subject to any defense* or counter-claim which the maker or debtor had against any assignor thereof *before notice of the assignment.*"

It is urged by counsel for appellants that the claim of the plaintiff is in the nature of an open account, and that their

Steele et al. v. Mills et al.

2. LEASE of coal land: assignment of monthly payments: nature of claim: equities against assignor. rights are controlled and defined by section 2087 of the Code, which makes the claim subject to any defense which the defendants may have against the assignors before suit brought. We do not think that the payments required in the lease and bond can properly be denominated an open account. In our opinion, the rights of the parties must be controlled by section 2082, above cited. By that section the assignee of the written instrument has a right of action in his own name, subject to any defense or counter-claim which the maker or debtor had against any assignor thereof *before notice of the assignment.* The plaintiffs, then, when they took their assignments, had a complete right to the royalties assigned to them, and there was no defense thereto by principals or sureties in the bond.

Defendants claim, however, that this right was lost by the new contract made by the lessees and Martin Hicks. This

3. ——: ——: equities against assignees: pleading and proof. claim might have merit if it were shown that the lessees and principals in the bond had no notice when they made the new contracts, that two-thirds of the royalties had been assigned to the plaintiffs. Having no such knowledge, they could insist on the validity of the subsequent agreement as against the assignees. This is the plain purport and meaning of the statute. But of this defense there is neither allegation nor proof. Counsel for defendants claim that it was incumbent on plaintiffs to prove that the lessees had notice of the assignments, because the defense was not required to prove a negative. But the want of notice is matter of defense necessary to be shown to avoid liability, and it was not incumbent on the plaintiffs to make a case by disproving the allegations of the answer, or, rather, as applied to this case, by disproving what the averments of the answer should have been to constitute an issuable defense. It appears to us to be very plain that, so far as appears in this record, the new contract was a nullity as to the assignees, and their rights remain the same as if it had never been made.

II. It is claimed that the assignees are estopped from recovery in this action because they participated in, and

4. FINDING of court: evidence to support.

advised and counseled, the making of the new contract. This is a law action, and the *proof of* the alleged participation was introduced on the trial, and the plaintiffs introduced evidence in rebuttal. We think that the court below was fully justified in finding that the evidence was insufficient to create an estoppel.

III. It is further insisted that the bond is a *personal* obligation between the parties thereto, and that the lessors

5. CONTRACT: non-negotiable: assignable.

had no authority to change the parties to the instrument by an assignment of the royalties under the lease. It is true, the instruments themselves made no provision for assignments; but they are assignable nevertheless. Code, § 2084.

We think the judgment is correct, and it is

AFFIRMED.